UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN ANDREWS,             )
                                 )
       Plaintiff(s),        )
                                 )
       vs.                   )     Case No. 4:20-CV-972 SRW
                                 )
ANDREW M. SAUL,[1]      )
Commissioner of Social Security     )
Administration,           )
                                 )
       Defendant(s).     )

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 23. Defendant filed a Brief in Support of the Answer. ECF No. 28. Plaintiff did not submit a Reply, and the time for doing so has passed. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

## I.    Factual and Procedural Background

On March 6, 2017, Plaintiff John Andrews protectively filed an application for supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381, *et seq*. Tr. 88, 156-73.

---

[1] At the time this case was filed, Andrew M. Saul was the Commissioner of Social Security. Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Kilolo Kijakazi for Andrew M. Saul in this matter.

Plaintiff's SSI application was denied on initial consideration, and he requested a hearing before

an Administrative Law Judge ("ALJ"). Tr. 86, 91-96. On April 10, 2019, Plaintiff filed an

application for disability insurance benefits (DIB) under Title II, 42 U.S.C. §§ 401, *et seq*. Tr.

191-96. Plaintiff's DIB application was escalated to the hearing level upon his request. Tr. 190.

Plaintiff and counsel appeared for a hearing on May 6, 2019. Tr. 32-71. Plaintiff testified

concerning his disability, daily activities, functional limitations and past work. *Id*. The ALJ also

received testimony from vocational expert Kristine Skahan, M.S. *Id*. On September 27, 2019, the

ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 7-25. Plaintiff filed a

request for review of the ALJ's decision with the Appeals Council. Tr. 150-53. On June 9, 2020,

the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's

decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court

accepts the facts as presented in the parties' respective statements of facts and responses. The

Court will discuss specific facts relevant to the parties' arguments as needed in the discussion

below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his

physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy[.]" §
1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the
claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the
claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is
not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner
looks to see whether the claimant has a severe impairment "which significantly limits claimant's
physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th
Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts
only to a slight abnormality that would not significantly limit the claimant's physical or mental
ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also*
20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the
impairment's medical severity. If the impairment meets or equals one of the presumptively
disabling impairments listed in the regulations, the claimant is considered disabled, regardless of
age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the
presumptively disabling impairments, the Commissioner assesses whether the claimant retains
the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§
416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do
despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.
2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant

3

evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). A court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 20, 2016, the alleged onset date. Tr. 12. Plaintiff has the severe impairments of "status post subarachnoid hemorrhage, peripheral neuropathy, a neurocognitive disorder, and a history of alcohol abuse." Tr. 12-13. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 13-15. The ALJ found Plaintiff has the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, or scaffolds, and never balance or crawl, but he can occasionally climb ramps and stairs, and occasionally stoop, kneel, and crouch. He can frequently reach and handle with his right upper extremity, but he can only occasionally finger and he can never feel with his (dominant) right upper extremity. The [Plaintiff] must avoid all exposure to workplace hazards, such as operational control of moving machinery and unprotected heights. His work is limited to performing simple, routine, and repetitive tasks.

Tr. 15-23. Plaintiff previously worked as the president of a company obtaining medical records for insurance companies. Tr. 38-43. He later worked in retail sales, as a delivery driver and a soccer referee. Tr. 43-46. The ALJ determined Plaintiff is unable to perform any of his past relevant work. Tr. 23.

The ALJ further found Plaintiff was born on May 24, 1967, and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. *Id*. He later changed age category to closely approaching advanced age. *Id.* Plaintiff has at least a high school education and is able to communicate in English. *Id*. The ALJ determined the transferability of job skills is not material to the determination of disability because, using the Medical-Vocational Rules as a framework, it supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. *Id*.

Relying on the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, the ALJ found there are jobs existing in significant numbers in the national economy which the Plaintiff can perform, including representative occupations such as cafeteria attendant (*Dictionary of Occupational Titles* ("*DOT*") No. 311.677-010); photo finishing counter clerk (*DOT* No. 249.366-010); and garment sorter (*DOT* No. 222.687-014). Tr. 23-24. The ALJ concluded Plaintiff was not under a disability from November 20, 2016, through the date of his decision on September 27, 2019. Tr. 46.

## IV.    Discussion

Plaintiff challenges the decision on four grounds: (1) the ALJ failed to properly evaluate the treating physician's opinion; (2) the ALJ exceeded his authority by inferring limitations from medical reports; (3) the mental RFC was not supported by substantial evidence; and (4) the ALJ failed to properly evaluate Plaintiff's statements about his symptoms.

6

## A.  Evaluation of Plaintiff's Treating Physician's Opinion

Plaintiff argues the ALJ erred by failing to attribute great weight to the April 8, 2019 Physical RFC Questionnaire (the "Questionnaire"), completed by his treating provider, Nurse Practitioner ("NP") Shannon Phillips, and co-signed by Dr. Eric Barnes. [2] *See* Tr. 873-76. Plaintiff argues this opinion should have been afforded significant or controlling weight.

The Questionnaire listed Plaintiff's diagnoses as traumatic subarachnoid hemorrhage, GERD, neuropathy, depression, insomnia, and anxiety. Tr. 873. Plaintiff's prognosis was described as fair, and his symptoms included general muscle weakness, insomnia, anxiety, numbness and pain. *Id*. NP Phillips and Dr. Barnes indicated his depression and anxiety would interfere with the level of attention and concentration needed for the completion of simple work tasks. Tr. 874. They further opined he could not walk one city block without rest; he could sit, stand, or walk for less than 2 hours in an 8-hour workday; he needed to get up and walk every 11-15 minutes for approximately 6-10 minutes; he would likely take an indeterminate number of unscheduled breaks during an 8-hour workday; he could occasionally lift and carry less than 10 pounds; rarely lift and carry 10 pounds; and never lift and carry more than 20 pounds. Tr. 874-75. In an 8-hour workday, they indicated he could use his right hand 5% of the time to grasp, turn objects, twist objects, and finely manipulate with his fingers; use his right arm 10% of the time to reach; use his left hand 75% of the time to grasp, turn objects, twist objects, and finely manipulate with his fingers; and use his left arm 75% of the time to reach. *Id.* They estimated he would likely be absent from work more than 4 days each month and would be a fall risk due to right leg weakness and numbness. Tr. 875-76.

---

[2] Although the Social Security Administration has revised its standards for evaluating the opinions of treating physicians in claims filed on or after March 27, 2017, *see* 20 C.F.R. § 404.1520c, Plaintiff's SSI application was filed on March 7, 2017. The Court will, therefore, evaluate this claim under the previous standards located at 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927.

The ALJ determined that the Questionnaire's "functional restrictions [were] not reasonably consistent with the longitudinal treatment records or with the consultative examination findings in the case record." Tr. 22. Specifically, the ALJ found the treatment records from Plaintiff's other providers, Dr. Stanley Martin and Dr. Mark Belew, "include[d] objective examination results that [were] not consistent with the excessive limitations that Nurse Phillips and Dr. Barnes opined to be present." *Id.*

With respect to claims filed before March 27, 2017, which applies here, a treating physician's opinion should be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000). Even if a treating physician's opinion is not entitled to controlling weight, it may still be entitled to deference and be adopted by the ALJ. *Id.* at 1012. The ALJ may discount or disregard a treating physician's opinion where other medical assessments are supported by superior evidence or where the treating physician renders inconsistent opinions. *See Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). Conclusory opinions, especially those which only involve checklist forms, may be discounted more readily. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010); *Rosa v. Astru*e, 708 F. Supp. 2d 941, 949 (E.D. Mo. 2010) ("A treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence.").

As a preliminary matter, the Court notes the Questionnaire contains opinions regarding Plaintiff's symptoms and functional limitations, but it does not refer to any clinical examinations, observations, or tests from which its conclusions could be derived. Despite the fact that NP Phillips and Dr. Barnes are two of Plaintiff's treating providers, the underlying record provides

few substantive treatment notes, including physical examinations, from either of them during the relevant period. In fact, NP Phillips' examination on June 5, 2018, does not support the dramatic limitations she included in the RFC Questionnaire she completed in April of 2019. Tr. 827-28.

The deference due to a treating physician's opinion is limited where that opinion consists solely of conclusory statements. *See Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994); *Wildman*, 596 F.3d at 964 ("[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements") (internal citation omitted). While a conclusory opinion from a treating physician may be owed controlling weight if it is supported by the medical record, the ALJ is free to discount such an opinion if the medical record does not support it. *Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019); *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) ("An ALJ may discount a treating source opinion that is unsupported by treatment notes.") (internal citation omitted); *Jones v. Astrue*, No. 4:12-CV-11-AGF-SPM, 2013 WL 1090357, at *14 (E.D. Mo. Feb. 28, 2013) (ALJ not required to give weight to an opinion unsupported by the physician's treatment notes).

Plaintiff argues the Questionnaire did not contradict other medical evidence or opinions, and the ALJ erred by determining otherwise. However, upon an examination of the record, the Court cannot agree with Plaintiff's contention. To the contrary, as the ALJ determined, the limitations proffered in the Questionnaire are not consistent with the underlying record, specifically the treatment notes from neurologist Dr. Seth L. Hepner; orthopedic surgeon Dr. Mark E. Belew; neurosurgeon Dr. Stanley Martin, and consultative examiner, Dr. John Krause.

On November 20, 2016, Plaintiff was examined by Dr. Martin and diagnosed with an acute subarachnoid hemorrhage over the right mid temporal region. Tr. 327-29. During the visit,

Plaintiff could not grip or raise his right arm, could not maintain elevation of his right leg, and required assistance to urinate. Tr. 337. Plaintiff was admitted to the hospital and began physical therapy on November 29, 2016. Tr. 402. Plaintiff began speech therapy for moderate dysphagia on November 30, 2016. Tr. 413.

On December 2, 2016, Plaintiff started comprehensive physical, occupational, and speech therapy at SSM Rehab Bridgeton. Tr. 609-11. He was discharged on December 28, 2016. Tr. 896. The Discharge Summary indicated he could tolerate a regular diet and had modified independence for comprehension and expression, but required assistance for memory and reasoning, bathing, dressing, sitting, and using the toilet. *Id*. He was noted to be able to go up and down 14 steps with a handrail and walk approximately 300 feet with a cane, but was a "moderately high fall risk." *Id*. A January 20, 2017 CT scan found "interval improvement" since the previous scan on November 29, 2016. Tr. 442.

On December 27, 2016, Plaintiff began speech, occupational, and physical therapy at Graham Medical Center. Tr. 649. Plaintiff was discharged on April 3, 2017. Tr. 662-63. The Discharge Note indicated he met his goal in achieving 78% of his activities of daily living and had "good" potential for improvement. Tr. 663. On February 22, 2017, Plaintiff reported he had "definitely gotten stronger" after 10 sessions of occupational therapy, despite some continued numbness. Tr. 652. On March 1, 2017, Plaintiff reported "a lot of progress" from physical therapy, though he felt his balance was off as he needed to sit down when putting on or removing his pants. Tr. 660. On March 20, 2017, Plaintiff reported his handwriting was getting better and started to experience more feeling in his fingers. Tr. 653.

On April 24, 2017, following his discharge from physical therapy, Plaintiff attended a follow-up appointment with Dr. Martin. Tr. 675. Treatment notes indicated he had "a persistent

clumsy right hand," "timing issues," and "numbness in his right foot and lateral calf as well as the right side of his trunk." Tr. 675. However, Plaintiff was observed to be "walking rather well" without assistance and had "good strength" in all four extremities. *Id.* Plaintiff told Dr. Martin that he ran approximately three miles several times per week. *Id*. Dr. Martin wrote that Plaintiff "continues to gradually improve and has only a mild residual right hemi paresis." *Id*.

On June 14, 2017, Plaintiff saw Dr. Alan Spivack for a consultative examination. Tr. 691-702. Upon examination, Dr. Spivack observed Plaintiff to have "minimal right hemiparesis" of his extremities, a normal gait, clumsy and poorly coordinated finger dexterity, positive straight leg raising to 85 degrees, and diminished light touch and pinprick on his right lateral lower extremity. Tr. 693. Dr. Spivack's overall impression was that Plaintiff's "confusion, memory loss and dysarthria" had all been resolved and he had "excellent return of function" following physical and occupational therapy despite having a "frozen right elbow and inability to flex right elbow secondary to right hemiparesis." Tr. 693, 702.

On July 18, 2017, Plaintiff appeared for a follow up appointment with Dr. Martin. Tr. 712. Treatment notes indicate "good strength in all 4 extremities," good range of motion in his cervical spine, and "moderate right upper extremity drift." *Id.* He was observed to walk "well without assistance." *Id*. Plaintiff reported he was able to run approximately three miles each night. Dr. Martin wrote that he could not explain Plaintiff's subjective complaints of worsening numbness as his brain MRI revealed no "underlying mass or vascular malformation." *Id*. A follow-up MRI found no abnormal enhancement or underlying masses. Tr. 715.

On September 26, 2017, Plaintiff saw Dr. Edward Belew. Tr. 878. Dr. Belew noted Plaintiff was "much more comfortable" with his right arm and could reach despite exhibiting some ongoing numbness in his right hand, right flank, and right leg. *Id*. He opined Plaintiff's

rotator cuff and generalized arm strength was a 4 out of 5, and had "essentially full range of motion of the shoulder." *Id*. Dr. Belew stated Plaintiff was "moving quite well," and he should "continue working on home exercise program to maintain strength and flexibility of the arm." *Id*.

On May 7, 2018, Plaintiff appeared to the emergency room after his "right arm cramped and became heavy" while he was jogging. Tr. 836. Upon examination, Plaintiff was found to have normal range of motion, intact strength and sensation in all four appendages, and normal coordination. Tr. 840. Plaintiff declined admission, and he was noted to be discharged with a steady gate and no new neurologic findings. Tr. 844. He was directed to follow up with a neurologist because it was possible that he was having "tonic seizures versus muscle[] spasms." *Id.*

On May 16, 2018, Plaintiff appeared to Dr. Hepner for a neurology evaluation. Tr. 1021-29. Plaintiff summarized his emergency room visit to Dr. Hepner and reported he was still able to run every evening. Tr. 1021. Upon examination, Plaintiff was alert and oriented with normal recent and remote memory and normal attention and concentration. Tr. 1023. He exhibited 5/5 motor strength, normal coordination, and normal gait and station for his age. *Id.* Plaintiff was able to walk on his heels and toes, and could tandem walk normally, squat, and rise from a sitting or squatting position without issue. Plaintiff was directed to continue his medication regime, including Keppra, and to avoid driving. Tr. 1024.

On June 15, 2019, Plaintiff appeared for a consultative examination with Dr. John Krause. Tr. 1045-51. Dr. Krause found Plaintiff had limited range of motion in his right elbow, shoulder, and wrist. Tr. 1049. He rated Plaintiff's grip strength and overall upper extremity strength of his right arm as three out of five. *Id*. He found Plaintiff's right hand to have mild limitations in opening a door using a knob, squeezing a blood pressure cuff, picking up a coin,

picking up and holding a cup, and picking up a pen. Tr. 1051. He found Plaintiff to have moderate limitations in using buttons and zippers, and tying shoelaces. *Id*. He further assessed Plaintiff as having moderate difficulty with pinch strength and muscle weakness in his right arm. *Id*. Dr. Krause's overall impression was that Plaintiff had "mild limitations with gait," "some substantial muscle weakness especially in the right upper extremity," and "moderate limitation observed on fine and gross motor skill testing of the right upper extremity." Tr. 1048.

After reviewing the treatment notes summarized above, the Court cannot find the ALJ erred in determining that the significant limitations presented in the April 8, 2019 Questionnaire by Dr. Barnes and NP Phillips were inconsistent with the record. Tr. 876. The Questionnaire limits Plaintiff to walking no more than one city block without pain, and limits him to standing no more than 15 minutes at a time. Tr. 874. Contrary to these stated limitations, on April 4, 2017, Plaintiff reported he would run approximately three miles several times per week; on July 19, 2018, he reported he would run three miles each night; on May 8, 2018, he reported he "runs for exercise;" and on May 16, 2018, he reported "he runs almost every evening, at least 5 miles or so." Tr. 675, 712, 815, 1021. Moreover, multiple doctors assessed Plaintiff as having a normal gait, Tr. 83, 612, 693, 803, 805, 828, 843, 1023, or mild limitations in gait with no need for an ambulatory device, Tr. 1048.

Dr. Barnes and NP Phillips further limited Plaintiff's ability to control his hands, fingers, and arms beyond what substantial evidence in the record would suggest. The Questionnaire opined that Plaintiff could grasp, turn, and twist objects with his right hand for about 5% of the time during a workday, perform fine manipulations with his fingers 5% of the time, and reach with his arms 10% of the time. Tr. 875. Such limitations are inconsistent with the reports of Dr. Belew, Dr. Martin and Dr. Krause regarding Plaintiff's ability to use his hands, fingers, and

arms. For example, on April 4, 2017, Dr. Martin found Plaintiff had "good strength" in all four extremities with "moderate right upper extremity drift." Tr. 712. On June 14, 2017, Dr. Spivack noted Plaintiff had "excellent return of function" from physical and occupational therapy, 4/5 strength in his right upper extremity, and 4 out of 5 grip strength in his right hand. Tr. 693, 700. On August 31, 2017, Dr. Belew noted Plaintiff reported no difficulties related to his right arm, shoulder, or hand performing his regular daily activities, including opening a tight or new jar, doing heavy household chores, carrying a shopping bag or briefcase, or using a knife to cut food. Tr. 999. Plaintiff also reported only mild difficulties with washing his back, sleeping, engaging in social activities, or performing recreational activities which involved taking some force or impact through his arm, shoulder, or hand. *Id*. On June 15, 2019, Dr. Krause opined he had "some reduced grip strength," "moderate limitation on joint motion testing," and "moderate limitation . . . on fine and gross motor skill testing of the right upper extremity." Tr. 1048. Dr. Krause further noted Plaintiff had only mild difficulty with his right hand in doing tasks such as opening a door using a knob, squeezing a blood pressure cuff bulb, picking up a coin, picking up and holding a cup, and picking up a pen, with moderate difficulty buttoning and unbuttoning, zipping and unzipping, and tying shoelaces. Tr. 1051.

A finding that Plaintiff has improved beyond the point where he can be considered disabled is a relevant factor which an ALJ can consider. *See Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008) (denying disability because Plaintiff's medical condition had improved since previous determination). Although Plaintiff may disagree with the ALJ's evaluation of his physical impairments, substantial evidence supports physical improvement, which includes his ability to regularly run for exercise and walk without use of an ambulation device. Physical examinations also support increased strength. A Court shall not overturn the ruling of an ALJ

merely on the grounds that substantial evidence may support an alternate conclusion. *See KKC ex rel. Stoner*, 818 F.3d at 370. Here, substantial evidence in the record as a whole supports the ALJ's determination to attribute less weight to the opinions of Dr. Barnes and NP Phillips.

### B.  Plaintiff's RFC Limitations

Plaintiff argues the ALJ abused his discretion by inferring physical limitations from Dr. Krause's consultative examination. ECF No. 23, at 7.

The ALJ analyzed Dr. Krause's opinion as follows:

> When Dr. Krause conducted his internal medicine consultative evaluation of the claimant in June of 2019, he also provided an opinion regarding the claimant's abilities to perform fine and gross manipulative movements of his hands and fingers. Dr. Krause assessed the claimant to have no difficulty using his left upper extremity. He believed the claimant had moderate difficulty with using his right hand for tying shoelaces and for operating buttons on clothing. He also assessed the claimant to have only moderate pinch strength and moderate weakness overall in his right hand. However, Dr. Krause believed the claimant would have only mild difficulty performing activities such as picking up a coin, picking up and holding a cup, squeezing a blood pressure cuff bulb, and opening a door using a doorknob. These activities involve gross handling rather than fine manipulation, and the undersigned notes that Dr. Krause's opinion is accordingly consistent with limiting the claimant to frequent handling with his right upper extremity. Dr. Krause did not treat the claimant, but he had the opportunity to conduct a thorough evaluation of the claimant before he rendered his opinion. His conclusions are also reasonably consistent with the remainder of the medical evidence of record. His opinion is accordingly due great weight.

Tr. 21 (internal citations to the record omitted).

Plaintiff specifically takes issue with the ALJ's RFC determination that he can "frequently reach and handle with his upper extremity," but can "only occasionally finger and never feel." ECF No. 23, at 8. Plaintiff argues these conclusions are based on inferences from the findings of Dr. Krause. The Court cannot agree. Substantial evidence reflects that the RFC limitations related to Plaintiff's hands were not only supported by Dr. Krause's opinion, but also the opinions of Plaintiff's treating physicians.

Notably, on August 24, 2017, Plaintiff completed a self-evaluation sheet for physical therapy and indicated he had no difficulties opening a tight or new jar, performing heavy household chores, carrying a shopping bag or briefcase, or using a knife to cut food. Tr. 997. One month later, on September 26, 2017, Dr. Belew examined Plaintiff and found him to be "much more comfortable with the [right] arm" and able to reach after his completion of formal physical and occupational therapy. Tr. 878. Dr. Belew rated his general arm and rotator cuff strength at 4 out of 5, with "positive impingement but essentially full range of motion of the shoulder." *Id*. Dr. Belew's findings, in conjunction with Plaintiff's own self-assessment, are consistent with the RFC finding that Plaintiff can frequently reach and handle, and Plaintiff can occasionally finger but never feel with his right hand.

Dr. Krause examined Plaintiff on June 15, 2019 and found he had "moderate limitation in joint motion testing," "some reduced grip strength," and "moderate limitation observed on fine and gross motor skill testing of the right upper extremity." Tr. 1048. Dr. Krause observed Plaintiff could button and unbutton a shirt, pick up and grasp a pen and write a sentence, and "carry and handle personal belongings with difficulty on the right." Tr. 1047. He rated Plaintiff's overall arm strength and grip strength at three out of five. Tr. 1049. Dr. Krause also measured Plaintiff's ranges of motion, finding that Plaintiff was limited in various movements of his right elbow, wrist, and shoulder. *Id*. These examination findings do not contradict the ALJ's determination that Plaintiff can reach and handle, but he retains some limitation in his ability to finger and feel with his right hand.

Plaintiff also appears to dispute the ALJ's decision to grant Dr. Krause's opinion "great weight." ECF No. 23, at 8. One of the tasks of an ALJ in a social security disability proceeding is to evaluate physicians' opinions and decide what weight, if any, to give them. *Rosa*, 708 F. Supp.

2d at 950 ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians."). An ALJ should follow certain guidelines in their analysis, including granting greater weight to examining medical professionals than non-examining professionals in general. *See Wright v. Colvin*, 789 F.3d 847, 852-53 (8th Cir. 2015); 20 C.F.R. §404.1527(c)(1). However, there are three factors used for evaluating opinion evidence: examining relationship, supportability, and consistency. *See* 20 C.F.R. §404.1527(c).

First, as Plaintiff acknowledges, Dr. Krause did examine him. Tr. 1046; ECF No. 23, at 8. Second, Dr. Krause provided detailed findings on Plaintiff's ability to do certain motions with his hands, shoulders, wrists and legs. He also noted Plaintiff's compliance and effort while participating in the evaluation. Tr. 1048-51. Third, as the ALJ determined, Dr. Krause's opinions are consistent with the findings of Dr. Martin and Dr. Belew. Tr. 22. Dr. Martin's findings that Plaintiff could complete basic tasks, such as opening a jar or doing heavy household chores, Tr. 997, are broadly consistent with Dr. Krause's assessments that Plaintiff would have mild difficulty in activities such as opening a door, picking up and holding a cup, or squeezing a blood pressure cuff bulb. Tr. 1051. Similarly, Dr. Belew's findings of "decreased light touch" and "ongoing numbness," Tr. 878, are consistent with Dr. Krause's findings of "moderate limitation" in fine and gross motor skills in Plaintiff's right arm. Tr. 1048. With these factors in mind, the Court finds the ALJ did not err in attributing great weight to Dr. Krause's consultative examination.

As previously mentioned, the ALJ need not adopt any specific medical opinion in its entirety when formulating a plaintiff's RFC. *See Hensley*, 829 F.3d at 932. An ALJ's responsibility is to determine an RFC based on all relevant evidence, of which medical records and the opinions of physicians are a part. *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013).

Upon careful review of the record, the Court finds the ALJ relied on substantial evidence from multiple medical professionals in formulating Plaintiff's RFC. Medical records support Plaintiff's RFC as to the use of his hands. Although the ALJ does not list each specific function and the exact evidence which supports each function, he is not required to do so. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1091 (8th Cir. 2018) ("This court review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [does] not require an ALJ to mechanically list and reject every possible limitation.") (internal quotation marks omitted).

### C.  Plaintiff's Mental RFC

Plaintiff argues his mental RFC is not supported by substantial evidence because the psychiatric evaluations cited by the ALJ were not recent enough to provide a clear picture of his current mental limitations. ECF No. 23, at 10. Specifically, Plaintiff argues the opinions of the non-examining psychologist, Dr. Robert Cottone, and examining psychologist, Dr. Kimberly Buffkins, were outdated and underdeveloped. *Id*.

The ALJ noted: "Mentally, the claimant's poor memory testing scores from June of 2017 support a finding that he is reasonably restricted to performing only simple, routine, and repetitive work tasks. However, the mental status observations in the record do not support the imposition of additional mental limitations." Tr. 21.

On June 14, 2017, Plaintiff obtained a psychological consultative evaluation from Dr. Buffkins. Tr. 704. During the visit, Plaintiff denied mood or behavior problems and confirmed he had not received any formal psychiatric treatment. Tr. 705. Dr. Buffkins found Plaintiff to be "cooperative, calm, and appropriate" during his examination with a "neutral" mood and "appropriate affect." Tr. 706. She observed him to be aware, able to recite basic facts, complete

simple calculations, and to respond appropriately to hypothetical questions. Tr. 706-07. Dr.

Buffkins applied the adult version of the Wechsler Memory Scale Test, in which he scored

"average" in visual and visual working memory, "borderline" in immediate and delayed

memory, and "extremely low" in auditory memory. Tr. 708. She then assessed his ability to

perform work-related activities. Tr. 707. She opined he had no or minimal limitations in his

ability to interact; mild limitations in his ability to concentrate, persist, or maintain pace and in

his ability to adapt and manage himself; and moderate limitations in his ability to understand,

remember, and apply information. *Id.* Overall, Dr. Buffkins concluded Plaintiff's memory

problems should not interfere with his independence in everyday activities but "greater effort,

compensatory strategies, or accommodation may be required." Tr. 709. The ALJ gave this

opinion partial weight. Tr. 22.

On July 7, 2017, Dr. Cottone evaluated the medical and psychiatric evidence, including

Dr. Buffkins' examination results, and rendered an opinion on Plaintiff's mental RFC. Tr. 84-85.

Dr. Cottone opined Plaintiff was markedly limited in his ability to understand and remember

instructions, but he was not significantly limited in his ability to remember locations and work-

like procedures, to understand and remember very short and simple instructions, to interact

socially, concentrate, persist and adapt. Tr. 84. Overall, Dr. Cottone concluded Plaintiff could

perform simple, routine work tasks due to his ability to understand, remember, carry out and

persist at simple tasks; make simple work-related judgments; relate adequately to co-workers or

supervisors; and adjust adequately to ordinary changes in work routine or setting. Tr. 84-85. The

ALJ gave this opinion "substantial evidentiary weight." Tr. 22.

While the record contains no further examinations from psychological experts, the ALJ

noted other physicians found Plaintiff to have clear thought processes, normal memory and good

concentration. Tr. 21. The ALJ concluded "there [were] few if any indications in the record to

suggest that the [Plaintiff] would need further mental restrictions." *Id*. The Court finds this

conclusion to be consistent with the opinions of other medical professionals regarding Plaintiff's

mental state. For example, on June 14, 2017, Dr. Spivack opined that his "confusion, memory

loss and dysarthria" had all been resolved. Tr. 693, 702. On February 7, 2018 and April 30, 2018,

Plaintiff's memory was described as "grossly intact," "goal directed," and "logical." Tr. 821,

826. On May 16, 2018, Dr. Hepner observed Plaintiff to be alert and oriented, with normal

memory and normal attention and concentration. Tr. 1023. On February 28, 2019 and March 19,

2019, Plaintiff exhibited full affect with intact memory, attention and concentration. Tr. 805. On

June 15, 2019, Dr. Krause found Plaintiff to be "alert" with "appropriate" mood and "clear

thought processes." Tr. 1047.

   Plaintiff argues the ALJ's mental RFC determination was not supported by substantial

evidence because the opinions of Dr. Buffkins and Dr. Cottone were nearly two years old at the

time of the hearing. ECF No. 23, at 10. The Court finds this argument to be unpersuasive. Where

a medical opinion is dated past the onset date of Plaintiff's alleged disability, mere age will not

make the opinion outdated for the purposes of determining an RFC. *See e.g. Bollinger o.b.o*

*Bollinger v. Saul*, No. 1:19 CV 124 RWS, 2020 WL 4732042, at *3 (E.D. Mo. Aug. 14, 2020)

(finding a 2-year-old opinion valid evidence since there was "no objective medical evidence in

the record" showing "a marked change in condition" after the opinion); *Sullins v. Astrue*, Case

No. 4:10-CV-1014-MLM, 2011 WL 4055943, at *6 (E.D. Mo. Sept. 6, 2011) (finding an opinion

covered "a relevant time period" though it was over one-year old). With no evidence on the

record to show that Plaintiff's mental health suffered a "marked change in condition" after these

two opinions were rendered, the Court cannot consider them stale. *See Bollinger*, 2020 WL 4732042 at *3.

Further, while the ALJ has a duty to fully develop the record when a crucial issue is undeveloped or underdeveloped, *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006), Plaintiff ultimately bears the burden to provide evidence proving he is disabled. *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008). An absence of medical evidence is not a sufficient reason to infer that a plaintiff is disabled; in fact, the opposite can be true. *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is also a basis for discounting a claimant's subjective complaints."); *Steed*, 524 F.3d at 876 ("the claimant's failure to provide medical evidence with this information should not be held against the ALJ when there is medical evidence that supports the ALJ's decision").

Substantial evidence supports the ALJ's decision to grant partial weight to Dr. Buffkins' report and substantial weight to Dr. Cottone's report. As to Dr. Buffkins, the fact that she conducted an examination weighs in her favor. 20 C.F.R. §404.1527(c)(1). Both reports are also consistent with the record as a whole, as evidenced by the repeated findings by Plaintiff's doctors that he had an intact memory and appropriate affect. 20 C.F.R. §404.1527(c)(4); Tr. 803, 805, 826, 1023, 1047. Both reports are the work of psychiatric specialists, which also warrants greater weight. 20 C.F.R. §404.1527(c)(5). Finally, with regard to Dr. Cottone's report, the ALJ noted that Dr. Cottone is familiar with the rules and evidentiary requirements of the social security disability program. Tr. 22; 20 C.F.R. §404.1527(c)(6) ("the amount of understanding of our disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, . . . are relevant factors that we will consider in deciding the weight to give to a medical opinion"). Opinions of state agency consultants may also be entitled

to greater weight than those of treating or examining sources. *See Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014). In sum, Plaintiff's arguments do not demonstrate the ALJ committed reversible error in his reliance on the opinions of Dr. Buffkins and Dr. Cottone in formulating Plaintiff's mental RFC.

### D.  Plaintiff's Subjective Symptoms

Lastly, Plaintiff argues the ALJ inappropriately discounted Plaintiff's subjective symptoms. Plaintiff contends the ALJ erred by failing to cite to specific reasons for finding his subjective reports were not credible. ECF No. 23, at 11-12. Plaintiff also argues the ALJ incorrectly determined Plaintiff's statements reflecting improvements in his condition were inconsistent with his earlier statements made before his recovery. ECF No. 23, at 12.

In evaluating Plaintiff's subjective symptoms, the ALJ wrote: "In short, the claimant's statements about the intensity, persistence, and limiting effects of his symptoms were not reasonably consistent with the objective findings in his longitudinal treatment records, or with many of the claimant's contemporaneous statements to his providers." Tr. 17. The ALJ further noted Plaintiff completed his Function Report approximately five months after his onset date, but he "recovered much better . . . than he initially expected." *Id*.

Plaintiff's March 6, 2017 SSI application indicated he suffered from "hemorrhagic stroke which has led to brain injury and paralysis." Tr. 157. Plaintiff completed a Function Report on March 27, 2017, detailing his symptoms and limitations. Tr. 240-54. Plaintiff indicated he was unable to work because of headaches, short term memory loss, focus and sleep issues, limited motor skills of his right hand and foot, and an inability to move his right arm above his shoulder. Tr. 240. He stated it "takes more time to dress" himself, has difficulties shaving because he needs to use his left hand, and struggles to cut his food. Tr. 241. He stated he was able to clean

his room for about 5 to 10 minutes once or twice a week, and could not drive due to limited control of his right foot. Tr. 242-43. He could shop once or twice a month in stores for personal care items for 30 minutes at a time, but could not handle money or use a checkbook due to poor control of his right hand. Tr. 243.

In describing his limitations, Plaintiff indicated he had difficulties with memory, lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, completing tasks, concentrating and using his hands. Tr. 245. He stated he could walk for 20-30 minutes before needing a 5-10 minute break. *Id*. He further stated he could pay attention for 15-30 minutes, and could follow written and spoken instructions "pretty well" despite forgetting "some details." *Id*. He noted his stress, anxiety and depression due to his limitations. Tr. 246.

During his hearing, Plaintiff testified further on his condition and limitations. Tr. 33-71. He stated he had been "completely paralyzed on [his] right side" but had recovered "a little bit." Tr. 46. He testified he was "very wobbly," would lose his balance, and had persistent numbness in his fingers. Tr. 46-48. He confirmed his ability to grab items, but he needed to concentrate to hold a cup. Tr. 49. For exercise he would use an elastic band or walk around a parking lot. Tr. 52-53. Plaintiff indicated he suffered from cramping and numbness which prevented him from sitting or walking for long periods of time. Tr. 57. He estimated he was able to stand for up to 10 to 15 minutes without falling. Tr. 59. Plaintiff denied taking medication for mental health treatment, but indicated he had a prescription for seizure prevention and neuropathy. Tr. 61. He also noted memory problems, stating he could not remember a list of five grocery items without writing them down. Tr. 65.

An ALJ is required to consider the following factors in assessing subjective symptoms: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the

precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of

medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence

of objective medical evidence to support the claimant's complaints." *Moore v. Astrue*, 572 F.3d

520, 524 (8th Cir. 2009). "While the claimant has the burden of proving that the disability results

from a medically determinable physical or mental impairment, direct medical evidence of the

cause and effect relationship between the impairment and the degree of claimant's subjective

complaints need not be produced." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

An absence of objective medical evidence is one factor which may be considered, but an

ALJ must "give full consideration to all of the evidence presented relating to subjective

complaints, including the claimant's prior work record, and observations by third parties and

treating and examining physicians." *Id*. Further, the ALJ "is not free to accept or reject the

claimant's subjective complaints *solely* on the basis of personal observations. Subjective

complaints may be discounted if there are inconsistencies in the evidence as a whole." *Id*.

(emphasis in original).

An ALJ is not required to discuss each of the *Polaski* factors, as long as he acknowledges

and considers the factors before discounting subjective complaints. *Grindley v. Kijakazi*, 9 F.4th

622, 630 (8th Cir. 2021). The ALJ's determinations of credibility are ordinarily due deference by

the courts. *Id*. (citing *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010)). An ALJ may

decline to credit a plaintiff's subjective complaints if the evidence as a whole is inconsistent with

a plaintiff's testimony. *See Swink v. Saul*, 931 F.3d 765, 771 (8th Cir. 2019); *Moser v. Kijakazi*,

No. 4:20 CV 724 ACL, 2021 WL 4476699, at *4 (E.D. Mo. Sept. 30, 2021). Inconsistencies

between a plaintiff's statements regarding their daily activities and their claimed limitations are

one potential ground for discrediting such statements. *Adamczyk v. Saul*, 817 F. App'x 287, 291 (8th Cir. 2020).

Plaintiff argues his recent statements regarding his symptoms are not "inconsistent" with his Function Report or hearing testimony, but are rather a reflection of his improvement over time. ECF No. 23, at 11. In making this argument, Plaintiff appears to misread the ALJ's opinion. The ALJ did not discount Plaintiff's credibility because of inconsistencies between Plaintiff's Function report and his most recent statements to treatment providers. Instead, the ALJ concluded that Plaintiff's statements are not consistent with the record as a whole *and* with "contemporaneous statements to his providers." Tr. 17.

Plaintiff's first inconsistent statement concerns his ability to stand and walk. During the May 6, 2019 hearing, the ALJ directly asked Plaintiff whether he ran for exercise, and Plaintiff said "No, I do not." Tr. 55. He added he could "lift some legs and get some steps in . . . I wouldn't call that running though." Tr. 56. Contrary to this testimony, multiple treatment providers reported Plaintiff's ability to run up to five miles at a time on a regular basis. Tr. 712, 836, 880, 1021. Plaintiff's physicians also commented on his ability to walk with a "normal gait." Tr. 83, 612, 693, 803, 805, 828, 1023. During Plaintiff's June 15, 2019 examination by Dr. Krause, he found no muscle weakness in Plaintiff's lower extremities. Tr. 1050. Dr. Krause further indicated Plaintiff "was able to squat and rise . . . with ease" and "walk on heels and toes with ease," although he could not stand or hop on his right foot alone. Tr. 1047. Plaintiff's subjective claims of severe limitations in standing and walking are inconsistent with his physicians' observations and with his own statements to those physicians.

Plaintiff's testimony regarding his right arm, hand and fingers were also not consistent with the underlying treatment records. Plaintiff stated he could not feel his fingers, did not have

25

any use of his hands, and would not be able to pick up a penny off of the floor. Tr. 48. However, Plaintiff reported no difficulties performing activities such as opening a tight jar, doing heavy household chores, carrying a shopping bag, or using a knife to cut food during physical therapy on August 24, 2017. Tr. 997. When Plaintiff met with Dr. Lebo on May 7, 2018, Dr. Lebo found Plaintiff had "good grips bilaterally," as well as intact strength and sensation in his right extremities. Tr. 837-840. On June 15, 2019, Dr. Krause rated Plaintiff's right hand grip strength at three out of five and assessed either mild or moderate difficulties in activities involving fine and gross manipulative movements of his right hand and fingers. Tr. 1051. Dr. Krause also assessed Plaintiff as having only mild difficulty with his right hand picking up a coin, which Plaintiff stated he could not do during the hearing. Tr. 48, 1051.

The ALJ also discussed multiple *Polaski* factors in his analysis of the Plaintiff's subjective complaints of pain and other limitations, including his daily activities, such as running for exercise, functional restrictions noted in treatment notes, and the absence of objective medical evidence to support the intensity of Plaintiff's complaints. The Court therefore finds there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's subjective complaints are inconsistent with the bulk of his objective treatment records. The ALJ considered the proper factors in evaluating Plaintiff's subjective complaints, and the Court will defer to the ALJ's credibility finding. *See Moore*, 572 F.3d at 524.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff John Andrews's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Kilolo Kijakazi for Andrew M. Saul in the court record of this case.

So Ordered this 30th day of November, 2021.


*/s/ Stephen R. Welby*
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE